IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-184

Filed 17 September 2025

Surry County, No. 21CRS052450-850

STATE OF NORTH CAROLINA

v.

TRAVIS RAY CREED

Appeal by Defendant from judgment entered 21 August 2024 by Judge Martin B. McGee in Surry County Superior Court. Heard in the Court of Appeals 6 August 2025.

*Attorney General Jeff Jackson, by Assistant Attorney General Hillary F. Patterson, for the State-Appellee.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Katy Dickinson-Schultz, for Defendant-Appellant.*

COLLINS, Judge.

Defendant Travis Ray Creed appeals the trial court's judgment revoking his probation. Defendant argues that the trial court erred by revoking his probation because the State did not present sufficient evidence that he "communicated a threat" under N.C. Gen. Stat. § 14-277.1, which incorporates the requirement that the State present sufficient evidence of a "true threat." Accordingly, Defendant argues, the State failed to show that he willfully violated the valid condition of his probation that

he "commit no criminal offense." We agree with Defendant and reverse the trial court's judgment.

## I. Background

Defendant pled guilty on 10 January 2024 to possession of a firearm by a felon and misdemeanor possession of marijuana. The trial court sentenced Defendant to a term of 12-24 months' imprisonment, suspended for 36 months of supervised probation.

Defendant's probation officer filed probation violation reports in March and July of 2024 alleging various violations, including that Defendant had willfully violated:

> General Statute 15A-1343(b)(1) "Commit no criminal offense in any jurisdiction" in that
>
> The Defendant has made credible threats concerning Judge Puckett a superior court judge, and Detective Johnson of the Surry County Sheriffs Office. These threats being substantiated by a credible witness to the district attorneys office in Surry County. These threats having occurred on or about 6-30-2024, while the Defendant is on supervised probation in Surry County, NC. (original in all capital letters).

The matter came on for hearing in August 2024. The State proceeded only on the alleged threat made against Detective Brandon Johnson ("Detective Johnson" or "Brandon"). At the hearing, the State presented testimony from three witnesses: Justin Potts, Defendant's friend; Detective Johnson; and Erik Pfundt, Defendant's probation officer.

The evidence presented at the hearing tended to show the following: On 30 June 2024, Defendant called Potts on the phone "all stressed out" and said he was "mad enough to kill somebody." Potts was concerned and went to see Defendant in person.

In person, Defendant mentioned "Judge Puckett and Brandon Johnson." Potts knew Brandon and thought highly of him. It was evident to Potts that Defendant had "a lot of animosity towards Brandon." Potts testified that Defendant "didn't say he was going to kill either one of them" but "he just had a lot of animosity towards Brandon[.]" Potts further testified that Defendant "was just stressed and scared, you know, about him really going to jail" and that when "people get scared[,] [t]hey don't think right, you know, during things." At that point, "that was pretty much it of that. And then, I didn't say anything. Didn't do anything, you know."

Two days later, Potts learned from a family member that Defendant had been committed to the hospital for trying to kill himself. Potts testified that the family member "called and said [Defendant] was -- acted like, you know, acted like he'd lost his mind, you know. And he kind of acted like that then to me, you know? But, you know, I couldn't say anything then." Potts contacted Detective Johnson and told him what Defendant had said to Potts two days earlier. Potts also called the district attorney's office.

Detective Johnson testified that Potts told him that Defendant "had made statements about wanting to kill me and kill Judge Puckett." When asked whether

he knew Defendant, Detective Johnson stated, "Never met him. Never dealt with him. Never arrested him. Never been part of any investigation. . . ." Detective Johnson was nevertheless concerned with what Defendant had said and reported it to the district attorney's office. The next day, once warrants were issued for Defendant's arrest, Detective Johnson went looking for Defendant.

Pfundt testified about the various probation violation reports and allegations he had filed, including the allegation that Defendant had violated the condition of his probation that he "commit no criminal offense in any jurisdiction." Pfundt also testified that Defendant had made disturbing comments about ending his life which led to Defendant's involuntary commitment.

The trial court found that Defendant had committed several willful violations of his probation, including that Defendant had violated the condition of probation that he "commit no criminal offense in any jurisdiction" as set forth in the violation report. The trial court revoked Defendant's probation and activated his sentence. Defendant appealed.

## II. Discussion

Defendant argues that the trial court erred by revoking his probation because the State did not present sufficient evidence that he "communicated a threat" under N.C. Gen. Stat. § 14-277.1, which incorporates the requirement that the State present sufficient evidence of a "true threat." Accordingly, Defendant argues, the State failed to show that he willfully violated the valid condition of his probation that he "commit

no criminal offense."

"[T]he alleged violation of a valid condition of probation need not be proven beyond a reasonable doubt." *State v. Duncan*, 270 N.C. 241, 245 (1967) (citations omitted). Instead, the State bears the burden of presenting sufficient evidence "to reasonably satisfy the judge in the exercise of his sound discretion that the defendant has willfully violated a valid condition of probation." *State v. Murchison*, 367 N.C. 461, 464 (2014) (citation omitted). "[T]he decision of the trial court is reviewed for abuse of discretion." *Id.* (citation omitted).

When First Amendment issues are raised, however, "an appellate court has an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression." *State v. Taylor*, 379 N.C. 589, 608 (2021) (quotation marks and citation omitted). "This obligation supplements rather than supplants the analysis that we typically utilize when reviewing a trial court's decision" but "does not empower an appellate court to ignore a trial court's factual determinations." *Id.*

It is a Class 1 misdemeanor to communicate a threat. N.C. Gen. Stat. § 14-277.1(b) (2025). A person communicates a threat when

> (1) He willfully threatens to physically injure the person . . . ;
>
> (2) The threat is communicated to the other person, orally, in writing, or by any other means;
>
> (3) The threat is made in a manner and under

circumstances which would cause a reasonable person to believe that the threat is likely to be carried out; and

(4) The person threatened believes that the threat will be carried out.

*Id.* § 14-277.1(a) (2025).

"[A] statute criminalizing speech 'must be interpreted with the commands of the First Amendment clearly in mind.'" *Taylor*, 379 N.C. at 600 (*quoting Watts v. United States*, 394 U.S. 705, 707 (1969)). And "an anti-threat statute requires the [State] to prove a 'true threat.'" *In re Z.P.*, 280 N.C. App. 442, 445 (2021) (*citing Watts*, 394 U.S. at 708). Accordingly, under the First Amendment, N.C. Gen. Stat. § 14-277.1 requires the State to prove a true threat. *See State v. Guice*, 286 N.C. App. 106, 110-11 (2022).

"[A] true threat [is] an objectively threatening statement communicated by a party which possesses the subjective intent to threaten a listener or identifiable group." *Taylor*, 379 N.C. at 605. "True threats are 'serious expression[s]' conveying that a speaker means to 'commit an act of unlawful violence.'" *Counterman v. Colorado*, 600 U.S. 66, 74 (2023) (*quoting Virginia v. Black*, 538 U.S. 343, 359 (2003)). "The 'true' in that term distinguishes what is at issue from jests, 'hyperbole,' or other statements that when taken in context do not convey a real possibility that violence will follow (say, 'I am going to kill you for showing up late')." *Id.* (*quoting Watts*, 394 U. S. at 708). "[T]o determine whether a defendant's particular statements contain a true threat, a court must consider (1) the context in which the statement was made,

(2) the nature of the language the defendant deployed, and (3) the reaction of the listeners upon hearing the statement, although no single factor is dispositive." *Taylor*, 379 N.C. at 600-01 (*citing Watts*, 394 U.S. at 708).

The first element of section 14-277.1(a)–the person "willfully threatens to physically injure the person"–"includes the subjective component of [a] true threat[]." *Guice*, 286 N.C. App. at 111; N.C. Gen. Stat. § 14-277.1(a)(1). The third element–"[t]he threat is made in a manner and under circumstances which would cause a reasonable person to believe that the threat is likely to be carried out"–includes the objective component of a true threat. *See United States v. Bagdasarian*, 652 F.3d 1113, 1119 (9th Cir. 2011) (the objective test asks "whether a reasonable person who heard the statement would have interpreted it as a threat") (citation omitted); N.C. Gen. Stat. § 14-277.1(a)(3).

Here, the evidence presented at the revocation hearing failed to adequately demonstrate the subjective and objective components of a true threat, and therefore was insufficient to support either the first or third elements of section 14-277.1(a).

When Defendant spoke to Potts on the phone, Defendant made the general statement that he was "mad enough to kill somebody" but did not threaten a specific person. When questioning Potts about what Defendant said to him when they met in person, the State asked, "What names did he mention after he said he was stressed enough to hurt somebody?" Potts responded, "Judge Puckett and Brandon Johnson." The State further questioned Potts, "When [Defendant] told you he was mad enough

to kill somebody, what was the first thing out of his mouth afterwards?" Potts responded, "He was just talking about Brandon and Puckett, but he didn't come out and say that he was[.]" Potts testified that Defendant "didn't say he was going to kill either one of them" but "he just had a lot of animosity towards Brandon[.]" Potts further testified that Defendant "was just stressed and scared, you know, about him really going to jail" and that when "people get scared[,] [t]hey don't think right, you know, during things."

Even assuming the evidence allows a reasonable inference that Defendant's statements were specifically directed toward Detective Johnson, the evidence is not sufficient to support a finding that Defendant's statements were "serious expression[s]" conveying that he meant to "commit an act of unlawful violence," as opposed to mere hyperbole. *Virginia*, 638 U.S. at 359.

The evidence is also not sufficient to support a finding that Potts understood Defendant's statements, in the context of their conversation, as a "serious expression" of an intent to kill or injure Detective Johnson. *Id.* Instead, the evidence shows that Potts understood Defendant's statements as indications that he had "a lot of animosity towards Brandon" and was "just stressed and scared" about going to jail. Potts explained that after his conversation with Defendant, he did nothing: "[T]hat was pretty much it of that. And then, I didn't say anything. Didn't do anything, you know."

It wasn't until two days later, when Potts learned that Defendant had been

hospitalized for trying to kill himself, that Potts contacted Detective Johnson. When the State asked Potts, "[W]ere you afraid enough for Brandon -- did you think that [Defendant] was going to act on that threat that he was stressed enough to hurt somebody?" Potts responded, "Well, I don't -- he was locked up at the time at the hospital, I mean[.]" Although the State argued at the revocation hearing, and argues in its brief, that Potts thought the threat was credible enough to "communicate it immediately to [Detective] Johnson[,]" this is simply not an accurate characterization of the evidence. In light of Defendant's hospitalization for attempted suicide and his behavior surrounding that event, it was certainly advisable for Potts to alert Detective Johnson to Defendant's animosity towards him. But Defendant's speech was not criminal.

Indeed, the trial court did not find that Defendant violated N.C. Gen. Stat. § 14-277.1(a) by communicating a true threat; the trial court found that Defendant made "credible threats" that were "substantiated by a credible witness." This standard does not satisfy the First Amendment. The evidence here was not sufficient to "reasonably satisfy the judge in the exercise of his sound discretion," *Murchison*, 367 N.C. at 464 (citation omitted), that Defendant's communication constituted a true threat outside of the protection of the First Amendment such that Defendant communicated a threat within the meaning of N.C. Gen. Stat. § 14-277.1(a). Accordingly, the trial court abused its discretion in concluding that Defendant willfully violated the valid condition of his probation that he "commit no criminal

offense." We thus reverse the trial court's judgment.

REVERSED.

Judges HAMPSON and FREEMAN concur.